United States District Court
Southern District of Texas

**ENTERED**

June 11, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SPENCER RIVAS PEREZ and ANAKAREN HERNANDEZ, §
§
§
Plaintiffs, §
§
V. §        CIVIL ACTION NO. 17-3484
§
OCWEN LOAN SERVICING, LLC, and §
U.S. BANK NATIONAL ASSOCIATION, §
AS TRUSTEE FOR RESIDENTIAL ASSET §
SECURITIES CORPORATION, HOME §
EQUITY MORTGAGE ASSET-BACKED §
PASS-THROUGH CERTIFICATES, §
SERIES 2006-KS8, §
§
Defendants. §

## MEMORANDUM AND RECOMMENDATION

Pending in this case is Defendants' Motion for Summary Judgment (Document No. 26) and Plaintiffs' Motion for Partial Summary Judgment (Document No. 29). Having considered the motions, the responses and replies, the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendants' Motion for Summary Judgment be GRANTED in PART and Plaintiff's Motion for Partial Summary Judgment be DENIED.

## I.    Background

This is essentially a quiet title case that was brought by purchasers of the residential property located at 15219 Mountain Heights Drive, Houston, Texas 77049 (referred to as "the Property") from RTED America, LLC, a lienholder who had foreclosed on the property in 2015. According to the

undisputed facts, the Property was purchased by Shalonica and Bryan Angelle in August 2002. In connection with that purchase, Angelle executed two notes and two Deeds of Trust with Sebring Capital Partners, the first of which, referred to as Deed of Trust #1 was to secure a 30 year loan in the amount of $140,712.00, and the second of which, referred to as Deed of Trust #2, was to secure a 15 year loan in the amount of $35,178.00. Sebring Capital Partners was referred to as "FIRST-LIEN BENEFICIARY" of Deed of Trust #1, and "SECOND-LIEN BENEFICIARY" of Deed of Trust #2. Both Deed of Trust #1 and Deed of Trust #2 were recorded in the Harris County property records on August 9, 2002. On that same date (August 9, 2002), both Deed of Trust #1 and Deed of Trust #2 were assigned by Sebring Capital Partners to JPMorgan Chase Bank as Trustee.

On June 16, 2006, the Angelles executed a third Deed of Trust. That third Deed of Trust, referred to herein as the "2006 Deed of Trust," was in favor of Homecomings Financial Network, Inc., and was to secure a 30 year loan in the amount of $144,700.00. As is most relevant to the claims and issues in this case, the 2006 Deed of Trust, with an "X" marked box on the deed of trust form, stated that:

> The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

2006 Deed of Trust at ¶ 27 (Document No. 26-6 at 12). No one disputes that the "Renewal and Extension exhibit" mentioned in the 2006 Deed of Trust was not attached to the copy of the 2006 Deed of Trust filed in the Harris County property records on August 14, 2006.

On July 6, 2006, before the 2006 Deed of Trust was recorded in the Harris County property

2

records, JPMorgan Chase Bank released the lien made the basis of Deed of Trust #1, with the "Release of Lien" reciting as follows: "In consideration of the undersigned having received full payment and satisfaction of the indebtedness secured thereby, and the debt thus being discharged, the undersigned hereby releases the lien of the above instrument."   (Document No. 26-8).   The Release of Lien was filed in the Harris County property records on July 11, 2006.  (Document No. 26-8).

On April 16, 2010, the 2006 Deed of Trust was assigned by Mortgage Electronic Registration Systems, Inc. as nominee for Homecomings Financial Network, Inc. to U.S. Bank National Association ("U.S. Bank") (Document No. 26-10).   Meanwhile, Deed of Trust #2 was assigned multiple times, with each assignment being recorded in the Harris County property records: first, it was assigned on June 1, 2011, by the Bank of New York Mellon Trust Company, as successor in interest to JPMorgan Chase Bank as Trustee, to Dreanbuilder Investments, LLC; second, it was assigned on September 29, 2014, by Dreambuilder Investments, LLC to Trinity Financial Services, LLC; and third, it was assigned on October 21, 2014, by Trinity Financial Services, LLC to RTED America, LLC.  (Document No. 26-11).

On February 3, 2015, RTED America, LLC foreclosed on Deed of Trust #2, and purchased the Property at the foreclosure sale for $50,544.51.  RTED America, LLC then sold the Property to Plaintiffs Spencer Rivas Perez and AnaKaren Hernandez (referred to hereafter as "Plaintiffs") on January 6, 2017, for $200,000.00.  Plaintiffs allege that following their purchase of the Property "the existence of the 2006 Deed of Trust was discovered."

Plaintiffs filed suit in state court, seeking to quiet title to the property.  Plaintiffs also sought a declaratory judgment that: (1) the absence of the "Renewal and Extension exhibit" from the 2006

3

Deed of Trust filing in the Harris County property records was not corrected (or cured) by U.S. Bank's filing, in June of 2016, of a "Deed of Trust Nonmaterial Correction Affidavit"; and (2) that the loan secured by the 2006 Deed of Trust "was accelerated no later than 2010 and was not reinstated" thereby extinguishing U.S. Bank's right to assert a lien on the Property. Defendants U.S. Bank, the holder of 2006 Deed of Trust, and Ocwen Loan Servicing, LLC, the loan servicer, removed the case to this Court on the basis of diversity jurisdiction, and filed Counterclaims against Plaintiffs for contractual and equitable subrogation, and a declaratory judgment that the 2006 Deed of Trust is a valid and existing lien on the Property that at all times had priority over the lien created by Deed of Trust #2. The parties then, following time for discovery, each filed a Motion for Summary Judgment. Defendants argue in their Motion for Summary Judgment (Document No. 26), that they are entitled to summary judgment on Plaintiffs' quiet title and declaratory judgment claims. Plaintiffs argue in their Motion for Partial Summary Judgment that they are entitled to summary judgment on: (1) Defendants' Counterclaim for Contractual and Equitable Subrogation; (2) Defendants' Counterclaim for Declaratory Judgment on the validity of U.S. Bank's lien; (3) their (Plaintiffs') own Declaratory Judgment claim on the effect of the "Deed of Trust Nonmaterial Correction Affidavit"; and (4) their (Plaintiffs') own quiet title claim. The briefing on those two Motions for Summary Judgment is complete.

## II.    Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating that there

4

exists no genuine issue of material fact. *Brandon v. Sage Corp.*, 808 F.3d 266, 269—70 (5th Cir.

2015) (citing *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986)). Once the moving party meets

its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence,

set out specific facts showing that a genuine issue exists" and that summary judgment should not be

granted. *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir.

2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).[1] A

party opposing a properly supported motion for summary judgment may not rest upon mere

allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not

suffice. *Celotex*, 106 S. Ct. at 2548. Instead, the non-movant "must go beyond the pleadings and

come forward with specific facts indicating a genuine issue for trial to avoid summary judgment."

*Brandon*, 808 F.3d at 270 (quoting *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th

Cir. 2006)).

In considering a motion for summary judgment, all reasonable inferences to be drawn from

both the evidence and undisputed facts are to be viewed in the light most favorable to the nonmoving

party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018). "If the record, viewed in the

light most favorable to non-movant, could not lead a rational trier of fact to decide in non-movant's

favor, summary judgment is appropriate." *Allen v. Radio One of Texas II, LLC*, 515 Fed. Appx 295,

299 (5th Cir. 2013) (citing *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993). On

the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof
at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the
record contains insufficient proof concerning an essential element of the nonmoving party's
claim." *Norwegian Bulk Transp. A/S v. Int'l Marin Terminals P'ship*, 520 F.3d 409, 412 (5th Cir.
2008).

judgment is improper." *Kelley*, 992 F.2d at 1413. Even if the standards of Rule 56 are met, a court

has discretion to deny a motion for summary judgment if it believes that "the better course would

be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2513 (1986).

## III.   Discussion

Each of the claims alleged in this case is subject to a motion for summary judgment. With

the exception of Plaintiffs' declaratory judgment claim on the validity of U.S. Bank's lien given the

2010 acceleration of the underlying note, each of the claims in this case relate to lien priority, with

the parties on both sides agreeing that this a lien priority case. Plaintiffs' quiet title claim is based

on its position and argument that Deed of Trust #2 had priority over the 2006 Deed of Trust, and that

the "Deed of Trust Nonmaterial Correction Affidavit" filed by and/or for US Bank on June 22, 2016,

did not and could not correct or cure the incorrect information provided in the 2006 Deed of Trust

that was filed in the Harris County property records on August 14, 2006. Defendants' subrogation

claim and Defendants' declaratory judgment claim are based on their position and argument that the

2006 Deed of Trust, because it was an extension and renewal of Deed of Trust #1 and indicated as

much on the 2006 Deed of Trust that was filed in the Harris County property records in 2006, had

priority over Deed of Trust #2. While the priority issues are key to this dispute, two claims –

Plaintiffs' two declaratory judgment claims – can and will be addressed first because a resolution

of those claims is both straightforward and has no appreciable effect on the lien priority issues.

### A.   Declaratory judgment claim on loan acceleration

Plaintiffs allege in their pleading that the indebtedness underlying the 2006 Deed of Trust

was accelerated in 2009 or 2010, that the loan was not thereafter reinstated, and that the time for US

6

Bank to assert its lien has now expired, rendering that lien invalid.[2]  Defendants have moved for

summary judgment on this claim, arguing that the uncontroverted summary judgment evidence

shows that Defendants' acceleration of the note underlying the 2006 Deed of Trust was abandoned,

waived, or rescinded by virtue of: (1) a loan modification agreement Defendants entered into in 2015

with the then-owners of the Property; (2) the subsequent notices of default that were sent to the then-

owners of the Property; and (3) Defendants' acceptance of payments from the then-owners of the

Property following the acceleration of the note.  Plaintiffs have not responded, at all, to Defendants'

Motion for Summary Judgment on this declaratory judgment claim.   Plaintiffs have therefore

abandoned and/or waived that claim, *see Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (a

claim or issue raised in a pleading but ignored on summary judgment may be considered waived

and/or abandoned), *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("failure to

pursue [a] claim beyond her complaint constituted abandonment"), and Defendants, for the reasons

---

[2] The exact allegations in Plaintiffs' pleading are that:

> 24.     On information and belief, the loan secured by the 2006 Deed of Trust
> went into default in 2009 or 2010, and Homecomings Financial, LLC, the holder
> of the note, accelerated the indebtedness.  Homecomings Financial, LLC began
> efforts to foreclose in 2010, as evidenced by the Appointment of Substitute
> Trustee recorded in the Harris County Real Property Records of April 13, 2010, at
> File No. 20100143653.
> 25.     Four days later, on April 16, the 2006 Deed of Trust was assigned to U.S.
> Bank.
> 26.     On February 23, 2011, U.S. Bank executed an Appointment of Substitute
> Trustee, which Appointment is recorded in the Harris County Real Property
> Records at File No. 20110094646.  Even though the loan was apparently
> accelerated in 2009 or 2010, U.S. Bank has never foreclosed on the 2006 Deed of
> Trust.
> 27.     Plaintiffs are entitled to a declaratory judgment that the loan secured by the
> 2006 Deed of Trust was accelerated no later than 2010 and was not reinstated.

Plaintiffs' Original Petition (Document No. 1-5 at 7).

set forth in their Motion for Summary Judgment, are entitled to summary judgment on Plaintiff's

declaratory judgment claim on the loan acceleration.

**B.      Declaratory judgment claim on validity and effect of US Bank's June 22, 2016, "Deed of Trust Nonmaterial Correction Affidavit"**

Plaintiffs allege in their pleading that U.S Bank's June 22, 2016 "Deed of Trust Nonmaterial

Correction Affidavit" did not correct or cure the earlier filing of the 2006 Deed of Trust.  According

to Plaintiffs:

> 21.      The Affidavit is defective and fails to correct the 2006 Deed of Trust to establish a right of contractual subrogation.  The Affidavit was executed as a non-material correction to a recorded instrument pursuant to Texas Property Code § 5.028.  Section 5.028 permits a person with knowledge to execute an affidavit to make a nonmaterial change to a recorded instrument that results from a clerical error.
> . . .

> \* \* \*

> 22.      The Affidavit attempted to correct the 2006 Deed of Trust's alleged omission of the Renewal and Extension Exhibit, which would establish a right of contractual subrogation to the First Lien Deed of Trust.  The omission of a document that establishes a right to contractual subrogation to prior liens is not the type of non-material correction that may be made pursuant to § 5.028.  Therefore, the Affidavit failed to establish any right of contractual subrogation.

> 23.      Plaintiffs are entitled to a declaratory judgment that the Affidavit failed to modify the terms of the 2006 Deed of Trust.

Plaintiffs' Original Petition (Document No. 1-5 at 6-7).  Both sides have moved for summary

judgment on this claim.  Plaintiffs argue in their Motion for Summary Judgment that the change

made by the Affidavit filed on June 29, 2016 was material because it purported to provide notice in

the Harris County property records of a subrogation claim or interest that did not otherwise exist.

In addition, Plaintiffs argue that the affidavit had no effect because it was filed after RTED America,

LLC had already foreclosed on Deed of Trust #2.  Defendants conversely argue in their Motion for

8

Summary Judgment that the affidavit made a "non-material" change insofar as it simply added or included an exhibit that had already been referenced in the 2006 filing.

Section 5.028 of the Texas Property Code allows for the filing of an affidavit to make a "non-material" change to a previously "recorded original instrument of conveyance." The purpose of such a non-material change affidavit under section 5.028 is to "correct a clerical error, including:

> (1) a correction of an inaccurate or incorrect element in a legal description, such as a distance, angle, direction, bearing or chord, a reference to a plat or other plat information, a lot or block number, a unit, building designation, or section number, an appurtenant easement, a township name or number, a municipality, county, or state name, a range number or meridian, a certified survey map number, or a subdivision or condominium name; or

> (2) an addition, correction, or clarification of:

>> (A) a party's name, including the spelling of a name, a first or middle name or initial, a suffix, an alternate name by which a party is known, or a description of an entity as a corporation, company, or other type of organization;

>> (B) a party's marital status;

>> (C) the date on which the conveyance was executed;

>> (D) the recording data for an instrument referenced in the correction instrument; or

>> (E) a fact relating to the acknowledgment or authentication

TEX. PROP. CODE ANN. § 5.028. Here, the non-material correction Affidavit at issue was signed on behalf of U.S. Bank on June 22, 2016, and filed in the Harris County property records on June 29, 2016. That contents of the Affidavit, in pertinent part, are as follows:

> 4.    ·The Original Instrument should have attached the Renewal and Extension Exhibit referenced in Paragraph 27.  The corrected Original Instrument, which includes the Renewal and Extension Exhibit, is attached hereto as Exhibit A.

9

5.      As stated in the Renewal and Extension Exhibit, the Note secured by the Original Instrument was "given in renewal and extension but not in extinguishment of the amount left and owing and unpaid by Borrower upon the Promissory Note in the original principal sum of $140,712.00, dated August 5, 2002, executed by Shalonica Angelle and Bryan Angelle and payable to the order of Sebring Capital Partners, Limited Partnership more fully described in and secured by a Deed of Trust of even date therewith, duly recorded in INSTRUMENT/REFERENCE NO.: W000223, Real Property Records, Harris County, Texas, upon and against the Property; and the Promissory Note in the original principal sum of $35,178.00, dated August 5, 2002, executed by Shalonica Angelle and Bryan Angelle and payable to the order of Sebring Capital Partners, Limited Partnership, more fully described in and secured by a Deed of Trust of even date therewith, duly recorded in INSTRUMENT/REFERENCE NO.: W000224, Real Property Records, Harris County, Texas, upon and against the Property; which liens are hereby expressly acknowledged by Borrower to be valid and subsisting against the Property and HOMECOMINGS FINANCIAL NETWORK, INC. is subrogated to all rights, liens and equities owed or claimed by the holder of such debt(s) and lien(s), and it is expressly agreed that said liens are hereby renewed, extended and continued in full force and effect to secure the payment of the Note secured by this Security Instrument.

(Document No. 26-7 at 3). Viewing the change made by the Affidavit against the laundry list of changes identified in the statute as non-material, the undersigned concludes that the Affidavit filed on behalf of U.S. Bank exceeds the scope of that allowed by section 5.028 of the Texas Property Code. In addition to not fitting within any of the categories of changes allowed for under § 5.028, the change made is centrally material to this case insofar as the parties seem to concede that there would be no lien priority dispute if the renewal and extension exhibit had been included with the filing of the 2006 Deed of Trust in August 2006. *See* Plaintiffs' Original Petition (Document No. 1-5) at 6. In that sense, and in the absence of any clear state law authority on the issue, *see In re Hernandez*, Case No. 18-33200, 2019 WL 113664 (S.D. Tex. Jan. 4, 2019) (noting that there is little guidance on whether a change is material or non-material, but concluding that correcting the reversal of the grantor's and grantees' names would be more akin to a non-material change whereas a

correction which substituted an entirely different party is a material change); *Freeman v. Wells Fargo Bank, N.A.*, No. 3:16-CV-72, 2017 WL 3142445, at *7 (S.D. Tex. July 25, 2017) (correcting an "inadvertently omitted legal description" could be done through a non-material change affidavit under § 5.028 of the Texas Property Code); *Tanya L. McCabe Tr. v. Ranger Energy LLC*, 531 S.W.3d 783, 796 (Tex. App.–Houston [1st Dist.] 2016) ("The addition of land to a conveyance that correctly conveys other land is a material change."), the Magistrate Judge concludes that the change made by the Affidavit  was a material change that could not be corrected pursuant to § 5.028 of the Texas Property Code.[3]   Defendants are, therefore, not entitled to summary judgment on this declaratory judgment claim.

## C.   Lien Priority

With those two declaratory judgment claims addressed, the two main issues advanced by the parties– the availability of subrogation and whether Plaintiffs were bona fide purchasers – can be considered.  Having considered those issues in connection with the admissible summary judgment evidence in the record, the Magistrate Judge concludes that genuine issues of material fact preclude summary judgment for both sides.  That conclusion is primarily based on two things: (1) the absence of proof, for purposes of  Defendants' subrogation claim, that the proceeds of the loan underlying the 2006 Deed of Trust were used to pay off the loan underlying Deed of Trust #1; and (2) the

---

[3] While section 5.029 of the Texas Property Code provides for material changes to a recorded original instrument of conveyance, no one argues that § 5.029 applies – nor could they given the strict filing requirements for affidavits under § 5.029, which were not met in this case. *See* TEX. PROPERTY CODE § 5.029 ("A correction instrument under this section *must* be: (1) executed by each party to the recorded original instrument of conveyance the correction instrument is executed to correct or, if applicable, a party's heirs, successors, or assigns; and (2) recorded in each county in which the original instrument of conveyance that is being corrected is recorded.").

uncontroverted summary judgment evidence that RTED America, LLC, prior to its foreclosure on Deed of Trust #2, notified U.S. Bank in writing of its plan to foreclose on Deed of Trust #2.

Lien priority, when the liens at issue are of the same general type, is based on timing, with the first recorded lien having priority over subsequently filed liens of the same type. *Williams v. Nationstar Mortg., LLC*, 349 S.W.3d 90, 93 (Tex. App. – Texarkana 2011, pet. denied) ("Generally, different liens upon the same property have priority according to the order in which they are created. This rule is known as 'first in time is first in right.'") (internal citations omitted); *AMC Mortg. Servs., Inc. v. Watts*, 260 S.W.3d 582, 585 (Tex. App. – Dallas 2008) ("In a contest over rights or interests in property, the party that is first in time is first in right."). For purposes of this case, where the liens at issue were of the same type – purchase money mortgage liens – the lien that was filed first has priority. No one disputes that Deed of Trust #1 was filed first and had priority over Deed of Trust #2. *See* Plaintiffs' Response to Request for Admission No. 1 (Document No. 26-15 at 8) ("Admit that Deed of Trust #1 was first im time to Deed of Trust #2. Response: Admitted."). It is U.S. Bank's position that it, by and through the 2006 Deed of Trust and the principles of contractual or equitable subrogation, stepped into the shoes of Deed of Trust #1 for priority purposes. Plaintiffs dispute that Defendants are entitled to subrogation of any kind. Plaintiffs also argue that they are entitled to bona fide purchaser status, which would invalidate any lien Defendants could claim.

The concept of subrogation is a "legal fiction by [ ] which an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another. The party who is subrogated is regarded as constituting one and the same person with the creditor whom he succeeds." *Kone v. Harper*, 297 S.W. 294, 297 (Tex. Civ. App. 1927), *aff'd*, 1 S.W.2d 857 (Tex.

Comm'n App. 1928). "There are various types of subrogation," *First Bank Texas, SSB v. W. D. Welch, P.C.*, No. 05-16-00403-CV, 2017 WL 2443132, at *2 (Tex. App. – Dallas June 5, 2017), including, as is relevant to this case, contractual subrogation, equitable subrogation, and a hybrid form of subrogation. Contractual subrogation exists when "a person advances money to take up and extend indebtedness secured by a vendor's lien on land under an *agreement* that such person shall stand in the place of the original holder of the indebtedness." *Vogel v. Veneman*, 276 F.3d 729, 735 (5th Cir. 2002) (quoting *Glasscock v. Travelers Ins. Co.*, 113 S.W.2d 1005, 1009 (Tex. App.–Austin 1938, writ ref'd)). For contractual subrogation to apply, there must be "an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss." *Monterey Mushrooms, Inc. v. Majestic Realty Co.*, No. 05-13-01015-CV, 2014 WL 6808676, at *2 (Tex. App. – Dallas Dec. 4, 2014) (quoting *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007). Equitable subrogation, in contrast, applies when there is "no language from any instrument" that gives rise to a right of subrogation, *Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 631 (Tex. App. – Houston [14th Dist.] 2010), but a showing is made that "one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." *Id.* The hybrid form of subrogation, which bridges the gap between contractual subrogation and equitable subrogation, generally applies where "there is no contract between the two lenders who are disputing whether the subsequent lender is entitled to subrogation [but] there is an express deed-of-trust provision between the debtor and subsequent lender stating that, if proceeds are used to pay off a prior debt, the lender will be subrogated to all rights of the prior lienholder." *Chase Home Fin.*, 309 S.W.3d at 631.

Here, Defendants' subrogation claim, regardless of the type of subrogation relied upon,

13

cannot be established as a matter of law.  Although it is likely the proceeds of the note underlying 2006 Deed of Trust were used to pay off the note underlying Deed of Trust #1, there is no admissible summary judgment evidence to that effect.  In particular, there is no admissible summary judgment evidence that the July 6, 2006 release of lien (Document No. 26-8) recorded in the Harris County property records was the result of the underlying note being paid with funds from U.S. Bank or its predecessor.  Such admissible evidence may be available, but it is not currently in the record.  In the absence of such admissible evidence, the subrogation claim cannot be decided as a matter of law.

Moreover, notwithstanding the validity or viability of the subrogation claim, the summary judgment evidence in the record, when viewed in the light most favorable to Plaintiffs, raises a genuine issue of material fact on Plaintiffs' assertion of bona fide purchaser status.[4]  "Status as a bona fide purchaser is an affirmative defense to a title dispute." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001).  "A bona fide purchaser is one who acquires property in good faith, for value, and without notice, constructive or actual, of any third party claim or interest." *Noble Mortgage & Investments, LLC v. D&M Vision Investments, LLC*, 340 S.W.3d 65, 75 (Tex. App–Houston [1st Dist.] 2011).  "Constructive notice is notice the law imputes to a person not having personal information or knowledge." *Madison*, 39 S.W.3d at 606.  As provided by § 13.002 of the Texas Property Code, an "instrument that is properly recorded in the proper county is . . . notice to all persons of the existence of the instrument."  Where the properly recorded instruments do not establish a clear chain of title, "a person may be charged with the duty to make reasonable inquiry using the facts at hand in the recorded deed." *Nguyen v. Chapa*, 305 S.W.3d 316, 324-25 (Tex.

---

[4] "A party claiming title through principles of equity has the burden of proving that a subsequent assignee of legal title is not a good faith purchaser." *AMC Mortgage Service, Inc. v. Watts*, 260 S.W.3d 582, 586 (Tex. App.–Dallas 2008).

App.–Houston [14th Dist.] 2009, pet denied).

Here, the parties dispute whether RTED America, LLC had constructive notice of U.S. Bank's alleged superior interest in the property. Defendants point to the checked box on the 2006 Deed of Trust form that was filed in the Harris County property records on August 14, 2006. Plaintiffs conversely argue that the checked box had no real meaning in the absence of the omitted extension and renewal agreement, and that the lien made the basis of Deed of Trust #1 had been fully released and extinguished at the time the 2006 Deed of Trust was recorded in the Harris County property records. Upon this record, it cannot be said that the checked box on the 2006 Deed of Trust form that was filed in the Harris County property records on August 14, 2006 provided RTED America, LLC with constructive notice of a superior lien. That 2006 Deed of Trust form was not complete in the absence of the referenced extension and renewal agreement, and cannot be said to have been "properly filed" on August 14, 2006. Moreover, the antecedently filed "release of lien" in the Harris County property records was some notice to RTED America, LLC that there was no superior lien at the time of its foreclosure on the Property. Thus, other than the checked box on the 2006 filing of the 2206 Deed of Trust, there is no summary judgment evidence that RTED America, LLC had notice of Defendants' alleged superior interest in the Property.

The summary judgment evidence in the record, viewed in the light most favorable to Plaintiffs, shows RTED America, LLC had no actual knowledge of the alleged superior lien, and that its title search did not provide it with constructive notice of the alleged superior lien. Erin Guilliam, RTED America, LLC's corporate representative, testified at her deposition that prior to RTED America, LLC's foreclosure on the Property in 2015, it performed a title search, which only revealed "a lien that was later in time than [ ] RTED's lien." (Document No. 29-5 at 12). She also testified

that RTED America, LLC did not "find anything indicating that somebody claimed a superior lien to the lien held by RTED America when it was preparing to foreclose," that RTED America, LLC had no notice at the time of its foreclosure in 2015, that anyone was claiming a subrogation interest, and that as of the date of the February 3, 2015 foreclosure sale, RTED America, LLC had no actual notice "that any lienholder claimed that it had a superior lien". *Id.* at 12-14, 18-20. Finally, Guilliam testified that RTED America, LLC, one month prior to the foreclosure, sent a written foreclosure notice to Defendants, evidencing RTED America, LLC's intent to foreclose on the Property. *Id.* at 13-14. It is undisputed that there was no response to that written notice.[5]

The summary judgment evidence in the record, taken in the light most favorable to Plaintiffs, coupled with the absence of any summary judgment evidence as to what more RTED America, LLC could or should have done to investigate whether there was a superior lien on the Property, raises a genuine issue of material fact on RTED America, LLC's status as a bona fide purchaser, and the extension of that status to Plaintiffs.[6] More particularly, there are genuine issues of material fact on whether RTED America had notice of Defendants' alleged superior lien,[7] as well as the reasonableness of the inquiry RTED America, LLC made prior to the foreclosure sale. Genuine issues of material fact on the bona fide purchaser issue defeat both sides' motions for summary judgment on their respective lien priority claims.

---

[5] Although it is not in the summary judgment records, Defendants' counsel stated at the Status Conference held on May 2, 2019, that Defendants routinely disregard and/or ignore foreclosure notices they receive from other lienholders.

[6] Plaintiffs' bona fide purchaser status is dependent on RTED America, LLC's bona fide purchaser status. That is because "[a] purchaser from a bona fide purchaser takes good title, even though he is not an innocent purchaser." *Reagan v. Andrews*, 241 S.W.2d 249, 251 (Tex. App.–Ft. Worth 1961, no writ).

[7] Of all the authority cited by the parties, *Watts'* discussion of constructive notice appears to most closely parallel the constructive notice issues in this case.

## IV.    Conclusion and Recommendation

Based on the foregoing, and the conclusion that Defendant is entitled to summary judgment on Plaintiffs' declaratory judgment loan acceleration claim, but that genuine issues of material fact exist on whether Plaintiffs can or should be considered bona fide purchasers, the Magistrate Judge

RECOMMENDS that Defendants' Motion for Summary Judgment (Document No. 26) be GRANTED in PART and DENIED in PART, with summary judgment being GRANTED on Plaintiffs' declaratory judgment loan acceleration claim and denied on Plaintiffs' other claims; and that Plaintiffs' Motion for Partial Summary Judgment (Document No. 29) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.   Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.   Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).   Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).   The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this ___10___ day of June, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

17